# EXHIBIT
# 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ELIZABETH HUNTER, LINDA STOIKE, ) <br> and WILLIAM GARRAUGHTY, ) <br> individually and on behalf of ) <br> all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FIRST TRANSIT, INC., ) <br> ) <br> Defendant. ) | Case No.  09 CV 6178 <br><br> Judge Rebecca Pallmeyer <br><br> Magistrate Judge Susan Cox |

_____

| | |
|---|---|
| TASHA JOSHAWAY, ) <br> MICHAEL YURKOWSKI, GEORGE ) <br> BECKETT, DEBBIE GOIN, and PENNIE ) <br> JOHNSON, individually and on behalf ) <br> of all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> FIRST STUDENT, INC., ) <br> ) <br> Defendant. ) | Case No.   10 CV 7002 <br><br> Judge Rebecca Pallmeyer <br><br> Magistrate Judge Susan Cox |

## SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    NATURE AND RESOLUTION OF THE CASE ...................................1

III.   GENERAL TERMS OF THE SETTLEMENT AGREEMENT ............5

       A.    Defined Terms. ...................................................................5

       B.    Cooperation. ........................................................................9

       C.    Persons Covered by this Settlement Agreement ..........10

IV.   COURT APPROVAL/NOTICE AND FAIRNESS HEARING ...........12

       A.    Jurisdiction and Venue ....................................................12

       B.    Preliminary Approval ......................................................12

       C.    CAFA Notice .....................................................................13

       D.    Settlement Administrator's Duties and
           Responsibilities ................................................................14

       E.    Class Notice ......................................................................14

       F.    Objections and Exclusions ...............................................16

V.    RELEASE/BAR OF CLAIMS ...........................................................17

       A.    Class Member Release.. ....................................................17

       B.    Named Plaintiffs' General Release.. ...............................18

VI.   NO ADMISSION, NO DETERMINATION ......................................18

VII.  DEFENDANTS' UNDERTAKINGS FOR FCRA COMPLAINCE ...19

       A.    Undertakings. ...................................................................19

       B.    Change In Law ..................................................................20

VIII. SETTLEMENT FUND AND MONETARY RELIEF ...........................21

A. Settlement Fund.. ................................................................21

B. Administration by Trustee.. ...............................................22

C. Distribution of Funds.. .......................................................23

D. Definition and Identity of Fund Participants............23

E. Allocation Plan and Monetary Award Procedures...24

F. Incentive Awards to Named Plaintiffs ..........................26

G. Procedure for Distribution of the Settlement Fund27

H. Failure of Finality; Defendant's Rescission of
Agreement................................................................................31

IX. ENFORCEMENT ...........................................................................33

A. No Third Parties.. .................................................................33

X. ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL......33

XI. GOVERNING LAW...........................................................................34

XII. OTHER PROVISIONS ....................................................................35

A. Exhibits...................................................................................35

B. Notices to Counsel...............................................................35

C. Failure to Insist on Strict Compliance..........................35

D. No Drafting Presumption.. .................................................35

E. Interpretation of Terms......................................................35

F. Counterparts.. ......................................................................35

G. Prior Confidentiality Orders............................................36

H. Agreement Binding...............................................................36

I. No Prior Assignments..........................................................36

ii

## I.     INTRODUCTION

Subject to approval by the United States District Court for the Northern District of Illinois (the "Court"), this Settlement Agreement ("Settlement Agreement," "Settlement" or "Agreement") sets forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and members of the Class and Subclasses defined herein, and Defendants First Transit, Inc. and First Student, Inc., both subsidiary corporations of non-defendant FirstGroup America, Inc. (collectively "First Group" or "Defendants") have settled and resolved all claims that have been raised in the Third Amended Complaints filed in the above-captioned cases, or that reasonably could have arisen out of the facts alleged therein, by the Named Plaintiffs Elizabeth Hunter, William Garraughty, Tasha Joshaway, Michael Yurkowski, Debbie Goin, Pennie Johnson, Linda Stoike, and George Beckett.

It is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release as defined in Section V, below.

## II.     NATURE AND RESOLUTION OF THE CASE

A.     On October 5, 2009, Named Plaintiffs Elizabeth Hunter and William Garraughty filed a nationwide class action complaint in the United States District Court for the Northern District of Illinois (hereinafter "the First Transit Action"), alleging that First Transit violated the Fair Credit Reporting Act ("FCRA") by taking adverse action against the Plaintiffs and a class of employees and employment applicants based on consumer reports without first providing the class members a copy of their consumer report and the Summary of FCRA Rights

1

published by the Federal Trade Commission ("FTC").  *See* 15 U.S.C. § 1681b(b)(3).

B.      On October 5, 2009, Named Plaintiffs Tasha Joshaway, Michael Yurkowski, and Debbie Goin filed a nationwide class action complaint in the United States District Court for the Central District of Illinois (hereinafter "the First Student Action"), alleging that First Student violated the Fair Credit Reporting Act ("FCRA") by taking adverse action against the Plaintiffs and a putative class of employees and employment applicants based on consumer reports without first providing the putative class members a copy of their consumer report and the FTC's Summary of FCRA Rights.  *Id.*

C.      On November 23, 2009, Defendants filed their Answers in the First Transit and First Student Actions denying the allegations in the Plaintiffs' Complaints.

D.      On January 14, 2010, the Plaintiffs in the First Student Action filed an Amended Complaint adding allegations that First Student procured consumer reports about Plaintiffs and a putative class of employees and employment applicants without first disclosing, in a document consisting solely of the discosure, that a consumer report may be obtained about the class members for employment purposes.  *See* 15 U.S.C. § 1681b(b)(2)(A)(i).  On January 15, 2010, the Plaintiffs in the First Transit Action filed an Amended Complaint adding allegations that First Student procured consumer reports about Plaintiffs and a putative class of employees and employment applicants without first disclosing, in a document consisting solely of the discosure, that a consumer report may be obtained about the

class members for employment purposes. *Id.*

E.      On January 28, 2010, Defendants filed their Answers in the First Transit and First Student Actions denying the allegations in the Plaintiffs' Amended Complaints.

F.      On April 9, 2010, the Plaintiffs in the First Transit Action filed a Second Amended Complaint adding allegations that First Transit procured consumer reports about the Plaintiffs and a putative class of employees without their written authorization. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii). On April 14, 2010, the Plaintiffs in the First Student Action filed a Second Amended Complaint adding allegations that First Student procured consumer reports about the Plaintiffs and a putative class of employees without their written authorization. *Id.*

G.      On April 28, 2010 and May 6, 2010, Defendants filed their Answers in the First Student and First Transit Actions denying the allegations in the Plaintiffs' Second Amended Complaints.

H.      On August 30 and 31, 2010, in an effort to determine whether the parties could settle this dispute prior to further protracted litigation, the parties' counsel, who are experienced class action attorneys, participated in a mediation, facilitated by Northwestern University School of Law Professor Lynn Cohn.

I.      The two-day mediation session did not result in a settlement, but the parties participated in continued settlement negotiations over the course of several weeks. The formal mediation session and follow-up settlement discussions between the parties concluded with the execution of this Settlement Agreement. During the

negotiations, counsel bargained vigorously on behalf of their clients. All negotiations were conducted at arms' length and in good faith.

J. On October 29, 2010, the district court judge presiding over the First Student Action, upon request of the parties, transferred the case to the Northern District of Illinois so that a single judge could supervise approval of the parties' proposed settlement agreement.

K. In January 2011, following the completion of settlement negotiations, Plaintiffs in the First Transit and First Student Actions, filed Third Amended Complaints. The Third Amended Complaints added allegations that the Defendants had obtained and used consumer reports from a company named AFR Consortium Associates, LLC ("AFR") without Plaintiffs' written authorization. The Third Amended Complaints further alleged that the Defendants used the AFR consumer reports to take adverse action against Plaintiffs and other putative class members without providing Plaintiffs and putative class members a copy of their AFR consumer reports and the FTC's Summary of FCRA Rights.

L. All parties and their counsel recognize that, in the absence of an approved settlement, they likely would face a long litigation course, including motions for class certification, formal discovery, motions for summary judgment, and trial and appellate proceedings that would consume time and resources and present each of them with ongoing litigation risks and uncertainties. The parties wish to avoid these risks and uncertainties by settling the cases pursuant to the terms and conditions of this Settlement Agreement. Class Counsel believe that the

4

terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate. First Student and First Transit wish to bring the litigation to a conclusion on the terms set forth in this Settlement Agreement.

M.      First Student and First Transit deny that they have engaged in any of the wrongdoing alleged in the Complaints or Amended Complaints and deny any liability for the allegations set forth therein. All released claims will be finally and fully compromised, settled, and released subject to the terms and conditions of this Settlement Agreement, which were the subject of negotiation and agreement by the parties.

## III.    GENERAL TERMS OF THE SETTLEMENT AGREEMENT

A.      **Defined Terms.**     In addition to the terms identified and defined elsewhere in this Settlement Agreement, and as used in this Settlement Agreement, the terms below shall have the following meanings:

1.      "Actions" means Case No. 09-CV-6178 (N.D. Ill.) and Case No. 10-CV-7002 (N.D. Ill.).

2.      "Adverse Action" has the same meaning that it does in the Fair Credit Reporting Act, 15 U.S.C § 1681a(k). For purposes of this Settlement Agreement, this definition includes, but is not limited to, the termination or denial of employment as well as any other decision for employment purposes, including loss of pay, that adversely affects any current or prospective employee.

3.      "Adverse Action Fund" means the product of the Settlement Fund Proceeds to Class Members and .14031.

4.     "AFR" means AFR Consortium Associates, LLC.

5.     "No Authorization Fund" means the product of the  Settlement Fund Proceeds to Class Members and .50385.

6.     "No Authorization Terminated Fund" means the product of the Settlement Fund Proceeds to Class Members and .06957.

7.     "Best Efforts" means all reasonable steps to realize or comply with the specific objectives to which the Best Efforts are directed.

8.     "Class Counsel" means Hughes, Socol, Piers, Resnick & Dym, Ltd.

9.     "Class Member" means any person who meets the criteria set forth in the definition of "Settlement Classes" below.

10.     "Consumer Report" has the same meaning that it does in the Fair Credit Reporting Act.  15 U.S.C § 1681a(d).  For purposes of this Settlement Agreement, this definition includes, but is not limited to, all communications from USIS, HireRight, or AFR to Defendants disclosing whether Class Members have been criminally prosecuted.

11.     "Costs of Settlement Administration" means all costs incurred by the Settlement Administrator in connection with the Settlement Fund including, but not limited to, those related to mailing and printing notice, claims processing, and legal advice relating to the establishment of the Qualified Settlement Fund.

12.     "Court" means the United States District Court for the Northern District of Illinois.

6

13.    "Defendants" means First Transit, Inc. and First Student, Inc.

14.    "Defendants' Counsel" means the law firm of Jackson Lewis LLP.

15.    "Depository Bank" means First Chicago Bank and Trust or another bank jointly selected by counsel for the parties to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Settlement Administrator.

16.    "Disclosure Fund" means the product of the Settlement Fund Proceeds to Class Members and .28627.

17.    "Effective Date" means the date on which all of the following have occurred: (1) the Court has finally approved this Settlement Agreement and has signed and entered an order so indicating; (2) the Court has entered an Order and Judgment dismissing the Action with prejudice, with continuing jurisdiction limited to enforcing this Settlement Agreement; and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*, petitions for certiorari or appellate review) has been finally resolved.

18.    "Final Approval" means the date on which the Court grants final approval of the Settlement.

19.    "FTC's Summary of FCRA Rights" means the document published by the Federal Trade Commission and attached hereto as Exhibit A.

20.    "HireRight" means HireRight Solutions, Inc.

21.     "Class Notices" means the Notices of Class Action, Proposed Settlement Agreement, and Settlement Hearing, which are to be mailed directly to Class Members, pending Court approval, substantially in the forms attached hereto as Exhibit B.

22.     "Part I Form" means a document substantially identical to the one attached hereto as Exhibit C.

23.     "Plaintiffs" or "Named Plaintiffs" means Elizabeth Hunter, William Garraughty, Linda Stoike, Tasha Joshaway, Michael Yurkowski, Debbie Goin, George Beckett, and Pennie Johnson.

24.     "Preliminary Approval" means the Order of the Court preliminarily certifying the Settlement Class and preliminarily approving this Settlement Agreement and the form of Notice to be sent to Class Members.

25.     "Revised Part I Form" means the document attached hereto as Exhibit D.

26.     "Settlement Administrator" means Settlement Services, Inc. ("SSI"), which has been selected by Class Counsel to administer the settlement pursuant to this Settlement Agreement and orders of the Court.

27.     "Settlement Fund" or "Fund" means the $5.9 million transferred by or on behalf of Defendants to the Depository Bank, pursuant to this Settlement Agreement, including all interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

28.     "Settlement Fund Proceeds to Class Members" means the

amount of the Settlement Fund that remains after subtracting the reasonable attorneys' fees and litigation expenses approved by the Court and paid to Class Counsel, the Costs of Settlement Administration, and the Incentive Awards paid to the Named Plaintiffs.

29.    "Fairness Hearing" means the hearing at which the Court will consider Final Approval of this Settlement Agreement and related matters.

30.    "Third Amended Complaints" means the Third Amended Complaints filed in these actions in January 2011.

31.    "USIS" means USIS Commercial Services, Inc.

B.    **Cooperation.**  The parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, abide by it, support it fully and use Best Efforts to defend it from any legal challenge, including by appeal or collateral attack.  The parties agree to accept non-material and procedural changes to this Settlement Agreement if required by the Court, but are not obligated to accept any changes in the monetary amount of relief or the substantive programmatic relief, or any other substantive change.  None of the Parties, their counsel, nor any person acting on their behalf, shall seek to solicit or otherwise encourage anyone to exclude themselves from the Settlement Class, or object to the settlement or appeal from any order of the Court that is consistent with the terms of this settlement, or discourage participation in the settlement.  If Class Members contact Class Counsel about this Settlement Agreement, Class Counsel may advise Class Members generally to consult with other counsel about

the Settlement Agreement.

### C.    **Persons Covered by this Settlement Agreement**

Solely for purposes of this Settlement Agreement and judicial approval of this Settlement Agreement, the parties stipulate to the certification of the following Settlement Class and Subclasses to be defined as follows:

### 1.    **Definition of "Settlement Class"**

An individual is a member of the Settlement Class if, between October 5, 2007 and August 10, 2010, Defendants: (1) procured a consumer report about the individual without making the disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i); (2) procured a consumer report about the individual without the individual's written authorization; or (3) took adverse action against the individual based in whole or in part on a consumer report without first providing the individual a copy of his or her consumer report and the FTC's Summary of FCRA Rights.

### 2.    **Definition of "Disclosure Subclass."**

An individual is a member of the Disclosure Subclass if and only if the individual satisfies both of the following conditions:   (1)  one of the Defendants procured a consumer report about the individual between October 5, 2007 and August 10, 2010; and (2) the Defendant that procured the consumer report made the disclosure required by 15 U.S.C. § 1681b(b)(2)(A)(i) using a document that contained a release of liability or that otherwise did not comply with that provision.

### 3.    **Definition of "No Authorization Subclass"**

10

An individual is a member of the No Authorization Subclass if and only if the individual satisfies one or both of the following conditions: (1) between October 5, 2007 and August 10, 2010, a consumer report regarding the individual was procured and uploaded to the J.J. Keller & Associates, Inc. Driver Management Online database ("DMO"), and either: (i) the consumer report was uploaded to the DMO more than seven days before the individual's Part I Form was uploaded to the DMO, or (ii) no Part I Form for the individual was ever uploaded to the DMO; or (2) one of the Defendants procured from AFR a consumer report about the individual between October 5, 2007 and August 10, 2010.[1]

### 4. **Definition of "Adverse Action Subclass."**

An individual is a member of the Adverse Action Subclass if and only if the individual satisfies all of the following conditions: (1) one of the Defendants procured a consumer report about the individual; (2) one of the Defendants took adverse action against the individual based in whole or in part on the consumer report; (3) such adverse action took place between October 5, 2007 and August 10, 2010, and (4) the individual did not receive from First Transit or First Student both

---

[1] The parties have relied on data derived from the J.J. Keller & Associates, Inc. Driver Management Online database ("DMO Database") to identify the Class Members about whom First Student may have caused to be procured a USIS criminal background consumer report without the Class Members' authorization. The parties' reliance on data derived from the DMO database for this purpose is appropriate and the most reasonable method of identifying the affected Class Members under the circumstances. Moreover, First Student represents that it was its intention that a criminal background consumer report be procured from USIS for every Laidlaw Education Services, Inc. ("LES") employee as part of the integration of First Student and LES in October 2007, and that those criminal background consumer reports be uploaded to the DMO database. First Student further represents that it procured or caused to be procured a USIS criminal background consumer report for virtually all LES employees, and that those reports were uploaded to

a copy of his or her consumer report and the FTC's Summary of FCRA Rights before suffering such adverse action, or First Transit or First Student did not otherwise comply with the requirements of the FCRA when taking such adverse action.

     E.    **Certification.**

The Settlement Class and Subclasses will be certified, for settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3).

## IV.   COURT APPROVAL/NOTICE AND FAIRNESS HEARING

     A.    **Jurisdiction and Venue**

     1.    The Court will retain jurisdiction of this Action for three (3) years from the Effective Date of the Settlement Agreement solely for the purpose of entering all orders and judgments authorized by this Agreement as may be necessary to implement and enforce it and the relief it provides.

     B.    **Preliminary Approval**

     1.    The parties have agreed upon the form and content of the Class Notices, subject to Court approval, copies of which are attached to this Agreement as Exhibit B.

     2.    Within twenty (20) days after execution of this Settlement Agreement, the parties will petition the Court for an order, in the form attached hereto as Exhibit E:

          a.    preliminarily certifying the Settlement Class and Subclasses;

---

the DMO database.

12

       b.     preliminarily approving this Settlement Agreement;

       c.     approving the Class Notices and authorizing them to be sent to the Class Members;

       d.     appointing Class Counsel;

       e.     preliminarily enjoining, pending the outcome of the Fairness Hearing, (1) all members of the Settlement Class from commencing, prosecuting or maintaining any claim already asserted in, and encompassed by, this Action, and (2) all members of the Settlement Class (including those members who request exclusion) from commencing, prosecuting or maintaining in any court or forum other than the Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of the Court in connection with this Settlement Agreement;

       3.     If Preliminary Approval is granted, a briefing schedule and Settlement Hearing date will be set at the Court's convenience. The parties' Motion for Final Approval and for Certification of the Settlement Class will be due no earlier than fifteen (15) days after the close of the objection and opt-out period, and the Settlement Hearing will be held no earlier than thirty (30) days after the close of the objection and opt-out period.

       4.     The time periods referenced in this Section IV.B are guidelines; actual dates will be inserted in the Preliminary Approval Order by the Court.

C.    **CAFA Notice**

Within ten days of the parties filing a motion for preliminary approval of this

13

Settlement Agreement, the Defendants shall serve the notices required by 28 U.S.C. § 1715.

D.       **Settlement Administrator's Duties and Responsibilities**

The Settlement Administrator will: (1) prepare and mail the Class Notices to the Class Members at their last known address; (2) prepare a second mailing of the Class Notices to those Class Members whose initial mailing is returned as undeliverable, through the use of the U.S. Postal Service's National Change of Address database, or such other reasonable procedure the Settlement Administrator may choose; (3) calculate the pro rata payments of Class Members; (4) establish and operate a website and maintain a toll-free number designed to provide information to and communication with Class Members; (5) seek additional information from Class Members, Class Counsel, and Defense Counsel, when appropriate or necessary; (6) deduct applicable payroll taxes and withholdings from payments made to No Authorization Terminated Fund Participants; (7) receive and file opt-out statements, objections and rescissions of opt-out statements; (8) implement the Allocation Plan and Monetary Award Procedures; (9) respond to questions from Class Members; and (10) perform any other duties necessary to carry out its responsibilities as set forth in this Agreement.

E.       **Class Notice**

1.       Within fourteen (14) days after Preliminary Approval of this Settlement Agreement, Defendants will separately identify (1) the Disclosure Fund Participants, (2) the No Authorization Fund Participants, (3) the No Authorization

Terminated Fund Participants, (4) the Adverse Action Fund Participants, and (5) the subset of Adverse Action Participants who worked for the Defendants or their predecessors, Laidlaw Education or Laidlaw Transit, for more than thirty days and whose employment was terminated based on a consumer report during the class period by providing the Settlement Administrator and Class Counsel, on a confidential basis, a database of the Class Members' full names, social security numbers, and last known addresses ("the Class Member Information"). Defendants will obtain the Class Member Information from the records of HireRight. The Settlement Administrator will use this information to send Class Notices and Settlement Payments to Class Members.

2.     The Settlement Administrator will use Class Members' social security numbers only for the purpose of locating and identifying Class Members and will keep their social security numbers confidential.

3.     Within forty-five (45) days of the Preliminary Approval Date, the Settlement Administrator will mail to all known Class Members, by first class mail, at their last known address one of the five forms of Class Notices, attached hereto as Exhibit B, in the form approved by the Court, corresponding to the applicable subclass of each Class Member.

4.     For those mailings to Class Members that are returned as undeliverable (for example, as "addressee not found"), the Settlement Administrator will conduct a second mailing. To do so, the Settlement Administrator will take reasonable steps to obtain updated address information for the affected Class

15

Members through the use of the United States Postal Service's National Change of Address database or such other reasonable procedure that the Settlement Administrator may choose. The Settlement Administrator may engage third-party vendors in order to locate Class Members. The second mailing shall occur as soon as reasonably practicable following the Settlement Administrator's receipt of the returned initial mailings. The Settlement Administrator will maintain a log of its activities undertaken pursuant to this section.

     5.    To receive money from this Settlement Agreement, Class Members must return signed claim forms to the Settlement Administrator that are postmarked no later than sixty (60) days after the Settlement Administrator first mails Class Members the Class Notice.

    F.    **Objections and Exclusions**

    1.    **Objections.** Class Member objections to this Settlement Agreement must be submitted in writing; must include a detailed description of the basis of the objection(s); and must be filed with the Court by the Class Member, with copies served on Class Counsel and Defendants' counsel postmarked within forty-five (45) days of the date that Notices are mailed to Class Members. No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having timely filed and served her objection(s) in writing.

    2.    **Exclusions.** Any Class Member who wishes to opt out of the Settlement Class must mail a written opt-out statement to the Settlement

Administrator at the address listed in the Class Notice.  The Settlement Class will not include those individuals who file and serve a timely opt-out statement. Individuals who opt out are not entitled to any monetary payment under this Settlement Agreement.

        a.     To be effective, an opt-out statement must be in writing, sent to the Settlement Administrator and postmarked on or before forty-five (45) days after the date that Notice is mailed to Class Members.  In addition, the opt-out statement must confirm that the Class Member is aware that by opting out she will forego the opportunity to receive a monetary payment from this Settlement.

        b.     The Settlement Administrator will provide all opt-out statements that are timely received to all counsel and file them with the Court.

        c.     Class Members who file opt-outs may rescind their opt-outs at any time before Final Approval.

## V.     RELEASE/BAR OF CLAIMS

        A.     **Class Member Release**.  Upon final approval by the Court of this Settlement Agreement (and except as to such rights or claims as may be created by this Settlement Agreement), the Settlement Class, each Member of the Class and the Plaintiffs fully release and discharge FirstGroup America, Inc., First Transit, Inc., and First Student, Inc., and their direct and indirect parent companies (including FirstGroup plc (UK)), their subsidiaries (including First Vehicle Services, Inc.), their predecessors (including Laidlaw Transit, Inc. and Laidlaw Education Services, Inc.), their successors and assigns, and their officers, directors, employees,

attorneys, and insurers from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, actions or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the Actions, for the time period October 5, 2007 through and including August 10, 2010. This Release shall not include any claims alleging that First Transit or First Student's use of criminal background check reports violated any state or federal gender, race, or national-origin discrimination laws, including but not limited to the claims raised in *Hudson, et al. v. First Transit, Inc.*, Case No. C10-03158 (N.D. Cal.). This Release shall survive the termination of this Agreement.

B.    **Named Plaintiffs' General Release**.   Each of the Plaintiffs who receives an incentive award from the Settlement Fund as provided in Section VIII.F. of this Settlement Agreement shall execute a general release of all claims in the form attached hereto as Exhibit F. This Release shall survive the termination of this Agreement but shall not extend to claims based on incidents occurring after such Plaintiff signs such Release.

## VI.    NO ADMISSION, NO DETERMINATION

A.    This Settlement Agreement does not, and is not intended to constitute, nor will it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims or defenses of any party in this case. The Class Members continue to assert the merits and validity of their FCRA claims. By entering into this Agreement, Defendants do not admit or

concede, expressly or impliedly, but deny that they have in any way violated FCRA or any other federal, state, or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. No court has made any findings or expressed any opinion concerning the merits, validity, or accuracy of any of the allegations, claims, or defenses in this case.

## VII.  DEFENDANTS' UNDERTAKINGS FOR FCRA COMPLAINCE

A.  **Undertakings.**  Subject to Section VII.B., below, Defendants agree that for a period of three years following the Final Approval of this Settlement Agreement, Defendants will adopt or continue in effect the following policies and practices:

1.  Defendants will not enact, maintain, or implement any policy that violates FCRA.

2.  Before procuring a consumer report for employment purposes about an employment applicant, Defendants will provide the employment applicant with the Revised Part I Form attached hereto as Exhibit D.

3.  Before procuring a consumer report for employment purposes about an employee, trainee, or employment applicant, Defendants will ensure that the employee, trainee, or employment applicant has authorized in writing the Defendants' procurement of the consumer report.

4.  Before the Defendants procure a consumer report for employment purposes from a consumer reporting agency other than HireRight or USIS, Defendants will obtain from the employee, trainee, or employment applicant

19

written authorization to procure the report on a document clearly disclosing that Defendants may procure consumer reports from entities other than HireRight or USIS.

        5.    Before using a consumer report to take adverse action against an employee, trainee, or employment applicant, Defendants will provide the employee, trainee, or employment applicant a copy of the consumer report, the FTC's Summary of FCRA Rights, and a period of no less than seven days in which the employee, employment applicant, or trainee may dispute the accuracy of the report. A decision by either of the Defendants, in their sole discretion, to suspend an employee with full pay and benefits shall not constitute an adverse action under this provision.

        B.    **<u>Change In Law.</u>**  Defendants' obligations in Section VII.A., above, may be changed, in whole or in part, upon the occurrence of a Change In Law as defined herein. A "Change In Law" is defined as a change in the FCRA, other federal statutory law, federal regulations, federal court case law interpreting the FCRA or other federal statutory law or federal regulations, state statutory law, state regulations, and/or state court case law interpreting state statutory law or state regulations that directly affects the legality of any of the undertakings set forth in Section VII.A, above. If the Defendants believe that a Change In Law has occurred, the Defendants or their counsel may give Class Counsel written notice, which shall include the following: (a) a description of the Change In Law; (b) the manner in which the Defendants believe the Change In Law affects the terms of the Settlement

Agreement and the basis for their conclusion; and (c) a written addendum to the Settlement Agreement including the revision(s) the Defendants propose in light of the Change In Law that is duly executed by authorized signatories of the Defendants or the Defendants' counsel. Class Counsel shall have thirty days from the receipt of the written notice to either: (i) return to the Defendants or their counsel a copy of the written addendum submitted, or (ii) inform the Defendants and/or their counsel in writing that they disagree with the Defendants' interpretation and will file a motion with the Court to request judicial intervention or interpretation. If Defendants do not provide Class Counsel written notice of a perceived Change In Law, Defendants will continue in effect the policies and practices outlined in Section VII. A. for the time period outlined therein.

## VIII.  SETTLEMENT FUND AND MONETARY RELIEF

A.    **Settlement Fund.** The payments under this Settlement Agreement, including attorneys' fees and costs, claims administration, and enhancement payments to named Plaintiffs shall be a total of Five-Million, Nine-Hundred Thousand Dollars ($5,900,000 or $5.9 milliion). This sum shall be referred to herein as the "Settlement Fund." Under no circumstances shall Defendants be required to pay more than $5.9 million under this Settlement Agreement or to pay any portion of the Settlement Fund prior to April 1, 2011. Within thirty (30) days after Preliminary Approval of this Settlement Agreement, but in no event before April 1, 2011, Defendants will pay by wire transfer to the Depository Bank the sum of $150,000. This sum of $150,000 shall immediately be distributed to the Settlement

Administrator to pay for the costs of Class Notice. No later than ten (10) days after the Effective Date of this Settlement Agreement, Defendants will pay by wire transfer to the Depository Bank the sum of $5.75 million.

The Settlement Fund will be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq., and will be administered by the Settlement Administrator under the Court's supervision. The $5.9 million will be placed in an interest-bearing account titled in the name of FirstGroup FCRA Settlement Fund, a Qualified Settlement Fund organized and existing under the laws of Florida. The $5.9 million so transferred, together with interest subsequently earned thereon, will constitute the total settlement cash outlay by Defendants in connection with this settlement: (a) all amounts paid to Class Members, including the Named Plaintiffs; (b) all attorneys' fees and costs awarded by the Court, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement; and (c) all costs incurred by the Settlement Administrator in connection with the Settlement Fund including, but not limited to, those related to notice, claims processing, and legal advice relating to the establishment of the Qualified Settlement Fund.

B. **Administration by Trustee.** The Settlement Administrator will serve as Trustee of the Settlement Fund and will act as a fiduciary with respect to the handling, management, and distribution of the Settlement Fund. The Settlement Administrator will act in a manner necessary to qualify the Settlement

Fund as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq*., and to maintain that qualification.  The parties believe that such treatment is appropriate and will cooperate to ensure such treatment and will not take a position in any filing or before any tax authority inconsistent with such treatment.

C.    **Distribution of Funds.**  Each and every Class Member who does not opt-out of this Action will be eligible to receive a monetary payment from one (and in rare instances, two) of four funds created to compensate Class Members for the release of claims described in Section V.  The four funds created to compensate Class Members will be designated the Disclosure Fund, the No Authorization Fund, the No Authorization Terminated Fund, and the Adverse Action Fund.  Class Members will be entitled to receive payment from only one of the four funds (with the exception of 10 Class Members, as described below), and only if they timely return their Claim Form to the Settlement Administrator.

D.    **Definition and Identity of Fund Participants**

1.    A Class Member is a Disclosure Fund Participant if he or she is is a member of the Disclosure Subclass but not a member of the No Authorization Subclass or the Adverse Action Subclass.

2.    A Class Member is a No Authorization Fund Participant if he or she is a member of the Disclosure Subclass and No Authorization Subclass, but he or she is not a member of the Adverse Action Subclass. [2]

---

[2]  However, 10 potential members of the Adverse Action Subclass may be entitled to receive

23

3. A Class Member is a No Authorization Terminated Fund Participant if he or she satisfies all of the following conditions: (a) he or she is a member of the Disclosure Subclass, No Authorization Subclass, and Adverse Action Subclass, (b) his or her employment was terminated by one of the Defendants based in whole or in part on a consumer report procured by one of the Defendants, and (c) between October 5, 2007 and August 10, 2010, a consumer report regarding the individual was procured and uploaded to the J.J. Keller & Associates, Inc. Driver Management Online database ("DMO"), and either: (i) the consumer report was uploaded to the DMO more than seven days before the individual's Part I Form was uploaded to the DMO, or (ii) no Part I Form for the individual was ever uploaded to the DMO.

4. A Class Member is an Adverse Action Fund Participant if he or she is a member of the Disclosure Subclass and the Adverse Action Subclass, but he or she is not a No Authorization Terminated Fund Participant.

E. **Allocation Plan and Monetary Award Procedures**

1. The Settlement Administrator will make equal payments to each Class Member who is a Disclosure Fund Participant from the Settlement Fund Proceeds to Class Members. The amount of that payment will be calculated by evenly dividing the value of the Disclosure Fund by the number of Disclosure Fund Participants who timely return properly completed and executed claim forms.

---

payments as No Authorization Fund Participants provided they otherwise fulfill the requirements for payment. These 10 individuals meet the requirements for membership in the No Authorization Subclass and are potential Adverse Action Subclass members who worked for the Defendants, or their predecessors, for thirty days or fewer.

2.     The Settlement Administrator will make equal payments to each Class Member who is a No Authorization Fund Participant from the Settlement Fund Proceeds to Class Members.  The amount of that payment will be calculated by evenly dividing the value of the No Authorization Fund by the number of No Authorization Fund Participants who timely return properly completed and executed claim forms.

3.     The Settlement Administrator will make equal payments to each Class Member who is a No Authorization Terminated Fund Participant from the Settlement Fund Proceeds to Class Members.  The amount of that payment will be calculated by evenly dividing the value of the No Authorization Terminated Fund by the number of No Authorization Terminated Fund Participants who timely return properly completed and executed  claim forms.

4.     The Settlement Administrator will make payments to each Class Member who is an Adverse Action Fund Participant from the Settlement Fund Proceeds to Class Members.  When making payments to the Adverse Action Fund Participants, the Settlement Administrator will first make a payment, in the amount of $750, to each Adverse Action Fund Participant who worked for the Defendants or their predecessors, Laidlaw Education or Laidlaw Transit, for more than thirty days, whose employment was terminated based on a consumer report during the class period, and who timely files a properly executed claim form.  After making payments to the Adverse Action Fund Participants who worked for the Defendants or their predecessors, Laidlaw Education or Laidlaw Transit, for more

than thirty days, whose employment was terminated based on a consumer report during the class period, and who timely files a properly executed claim form, the Settlement Administrator will then make equal payments to the remainder of the Adverse Action Fund Participants who return claim forms.[3]  The amount of that payment will be calculated by evenly dividing (1) the amount of the Adverse Action Fund remaining after the Settlement Administrator makes payments to the Adverse Action Fund Participants who worked for the Defendants or their predecessors, Laidlaw Education or Laidlaw Transit, for more than thirty days, whose employment was terminated based on a consumer report during the class period, and who file a properly completed and executed claim form by (2) the remaining number of Adverse Action Fund Participants who timely return properly completed and executed claim forms.

F.      **Incentive Awards to Named Plaintiffs**

Subject to the approval of the Court, an aggregate amount of $32,000 will be set aside from the Settlement Fund for incentive awards to the Named Plaintiffs in the following amounts: Elizabeth Hunter - $5,000, William Garraughty - $5,000, Tasha Joshaway - $5,000, Michael Yurkowski - $5,000, Debbie Goin - $5,000, Pennie Johnson - $1,000, Linda Stoike - $1,000, and George Beckett - $5,000.  These

---

[3] One individual may be entitled to receive the $750 payment as well as the payment issued to the remainder of Adverse Action Fund Participants who return claim forms, provided he fulfills the requirements for payment, because, based on the Defendants' records, one of the Defendants may have taken adverse action against him based on a consumer report twice during the class period – once when he had been employed by one of the Defendants for more than thirty days, and once when he had not been.

incentive awards reflect: (a) the Named Plaintiffs' assumption of the risk and potential liability related to being a Named Plaintiff, including potential liability for taxable costs had Defendants litigated this action to a judgment in their favor; (b) the Named Plaintiffs' assistance to Class Counsel; and (c) the Named Plaintiffs' broader waivers of claims outside the scope of the class claims addressed in this Settlement. These payments will be in addition to payments that will be made to the Named Plaintiffs as members of the Class and Subclasses pursuant to the Allocation Plan and Monetary Award Procedures described in this Agreement. The Settlement Administrator will make payment of incentive awards to each Named Plaintiff at the same time it distributes the Named Plaintiff's award as a Class Member.

G.    **Procedure for Distribution of the Settlement Fund**

1.    **Payment to Settlement Administrator**

As set forth in section VIII.A., above, within 30 days following the Court's preliminary approval of this Settlement Agreement, but in no event before April 1, 2011, Defendants will pay by wire transfer to the Depository Bank the sum of $150,000 into the Qualified Settlement Fund. The Settlement Administrator may deduct from this amount the fees and costs it incurs in preparing and mailing the Class Notice, and for any other duties it undertakes pursuant to its administration of this Settlement Agreement. At the beginning of each month, the Settlement Administrator shall provide a detailed accounting to Class Counsel and Defendants' Counsel describing the fees and costs it incurred the previous month. As set forth

in section VIII.A., above, within 10 days of the Effective Date of the Settlement, Defendants shall pay by wire transfer to the Depository Bank the sum of $5.75 million (constituting the remainder of the $5.9 million Settlement Fund) into the Qualified Settlement Fund.  Thereafter, the Settlement Administrator may deduct from the $5.75 million the fees and costs it incurs or has incurred for any duties it undertakes pursuant to its administration of this Settlement Agreement.

2.    <strong><u>Distribution of the Monetary Awards</u></strong>

Within a reasonable period of time following Final Approval, not to exceed fourteen days after the Effective Date of the Settlement, the Settlement Administrator will distribute Settlement Fund Proceeds to Class Members by first class mail.  The Settlement Administrator will only issue check(s) in the name of Class Members unless Section VIII.G.6 below (Deceased Settlement Class Member) is applicable.  The Settlement Administrator will include with each check to No Authorization Terminated Fund Participants a statement showing the gross amount of the Settlement Payment and an itemized statement of all deductions made for that portion allocated to lost wages, as described in Section VIII.H.3, below.   All other payments made to Class Members will not be subject to withholdings and will be reported to the IRS on Form 1099-MISC.

Also within a reasonable period of time following Final Approval, not to exceed fourteen days after the Effective Date of the Settlement, the Settlement Administrator shall:  (a) distribute to Class Counsel amounts approved by the Court to compensate or reimburse Class Counsel  for attorneys' fees and litigation

expenses incurred in this case, and (b) distribute the incentive awards to the Named
Plaintiffs as approved by the Court.

3. **Allocation of Payments.**

Settlement Payments made to No Authorization Terminated Fund
Participants will be allocated as follows: 50.0% to lost wages and 50.0% to
compensatory damages. Settlement Payments made to all other Class members
will be allocated as statutory damages recoverable under 15 U.S.C. § 1681n.

4. **Tax Withholdings and Reporting.**

For the fifty percent of any payment made to the No Authorization
Terminated Fund Participants that is allocated to lost wages, appropriate
deductions and withholdings will be made for federal and state income taxes, the
employee's share of social security and Medicare taxes, and any local income or
payroll taxes that apply. Amounts allocated to lost wages will be reported to the
IRS on Form W-2. The Settlement Administrator will also calculate, for any
payment that is allocated to lost wages, the employer's share of all taxes or
contributions (i.e., matching social security, Medicare or other required withholding
or payroll taxes). Defendants will timely remit all such payments to the Settlement
Administrator for payment to appropriate taxing authorities; provided, however,
that Defendants' obligation to pay the employer's share of any taxes and
contributions shall not exceed Eighteen Thousand Dollars ($18,000). Any employer
taxes and contributions exceeding $18,000 shall be paid from the Settlement Fund.
The Settlement Administrator will be responsible for preparing and filing all

appropriate tax filings and reports, and for reporting and remitting to the appropriate taxing authorities the employer's share of taxes or contributions.

5. **Undeliverable And Uncashed Checks**

Any checks returned as undeliverable will be held by the Settlement Administrator and remailed to the recipient upon receipt of a confirmed address provided by either the Class Member or Class Counsel.  Lost award checks can be reissued by the Settlement Administrator up until 120 days from the date the original awards checks were mailed.  Reissued checks will be valid until 120 days from the original awards mailing date or thirty (30) days from the date of reissue, whichever is later.  When all checks are stale, the Settlement Administrator will determine which checks were not negotiated and will amend the reporting with the IRS to reflect that those Class Members did not receive income from the Settlement.

6. **Deceased Settlement Class Members**

Any Settlement Payment payable to a deceased Class Member will be made payable to the estate of the deceased Class Member upon timely receipt by the Settlement Administrator of proper written proof of the estate's entitlement to receive the deceased Class Member's assets.

7. **Distribution of Remaining Funds**

It is the intention of the parties to completely distribute the Settlement Fund. In the event that settlement checks mailed to Class Members are returned as undeliverable or otherwise not cashed before going stale, and/or that the Settlement Fund is not completely distributed for any other reason (other than denial of Final

Approval), the remaining undistributed sum shall be distributed as follows: first, Defendants shall receive an amount equal to the employers' share of payroll taxes or contributions required for settlement payments made to No Authorization Terminated Fund Participants (as described in Section VIII.G. 4), and second, any remaing funds shall be distributed as a Cy Pres Fund to Cabrini-Green Legal Aid Clinic, earmarked to be used for programs advocating employment opportunities for individuals with criminal records**.**

### 8.    Report from Settlement Administrator

Within thirty (30) days of the final distribution of the Settlement Fund, the Settlement Administrator will furnish a final accounting of all distributions from the Settlement Fund to the Court with copies to Class Counsel and Defendants. The accounting will not contain information by which any Class Member might be identified; except for good cause shown (such as enforcement of a release), the identity of Class Members receiving Settlement Payments will not be disclosed to Defendants.

### H.    Failure of Finality; Defendant's Rescission of Agreement

1.    If the number of Class Members who have duly requested exclusion from the Settlement Class in the manner provided in the Court's Preliminary Approval equals or exceeds 10% of the Settlement Class, then Defendants shall have the right, for seven (7) days after the deadline for Class Members to opt out, to either withdraw from and fully terminate this Settlement Agreement by providing written notice to Class Counsel and the Court, or not to

withdraw from this Settlement Agreement. The Defendants' failure to provide written notice to withdraw within the aforesaid seven (7) day period constitutes a waiver and termination of Defendants' right to withdraw pursuant to this Paragraph.

2.      In the event that this Settlement Agreement does not become final and binding, no party will be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, and claims and defenses on the merits. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval hereof will be admissible in any court regarding the propriety of class certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement). Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

3.      If Defendants exercise their option to withdraw from the Settlement or if this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or, if following Final Approval by this Court, such approval is reversed or substantively modified), the parties will be restored to their respective positions that existed prior to entering into this Settlement Agreement; the terms and provisions of this Settlement Agreement will have no force or effect and will not be used in these Actions or in any proceeding for any purpose; the Settlement Fund

32

will be returned to Defendants, including the interest earned by the Settlement Fund through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, paid or incurred by the Settlement Administrator as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement will be treated as vacated, *nunc pro tunc*; and the litigation of the Actions will resume as if there had been no Settlement Agreement, with no stipulated Class or Subclasses. The parties retain all rights, claims, and defenses as to class certification and otherwise as to any of the allegations asserted in these Actions. This Settlement Agreement will not be considered an admission of liability by Defendants or represent a cap on damages available to the Named Plaintiffs, the Class, or the Subclasses.

## IX.   **ENFORCEMENT**

A.   **No Third Parties.**  Enforcement of this Settlement Agreement will be prosecuted by Class Counsel or counsel for Defendants only, not third parties. Class Counsel will meet and confer with counsel for Defendants prior to commencement of any enforcement proceedings.

## X.   **ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL**

As discussed above in Section VIII, all of Class Counsel's fees and costs, including those in connection with securing Court approval of this Settlement Agreement, confirmatory discovery, the claims process and any monitoring of this Settlement Agreement, will be paid from the Settlement Fund, following approval of

those attorney's fees and costs by the Court. $1,180,000.00 of the Settlement Fund will be allocated to payment of Class Counsel's attorneys' fees and costs, subject to approval of the Court. Defendant agrees not to contest this award of attorneys' fees and costs to Class Counsel at the Court's Final Approval Hearing.

## XI. GOVERNING LAW

A.    The parties agree that federal law will govern the validity, construction, and enforcement of this Settlement Agreement. To the extent that it is determined that the validity, construction or enforcement of this Settlement Agreement or the Class Member Release executed pursuant to its terms is governed by state law, the law of Illinois shall apply.

B.    This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the parties with respect to the Settlement. This Settlement Agreement does not impose any obligations on the parties beyond the terms and conditions stated herein. Accordingly, this Settlement Agreement will not prevent or preclude Defendants from revising its employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as they are consistent with this Settlement Agreement.

C.    Except as specifically provided for herein, this Settlement Agreement may not be amended or modified except with the express written consent of the parties.

## XII.  OTHER PROVISIONS

A.  **Exhibits**.  The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

B.  **Notices to Counsel.**  All notices to counsel required or desired to be given under this Settlement Agreement will be in writing and by first-class mail or e-mail to counsel for the respective parties (specifically, to Matthew J. Piers of Hughes, Socol, Piers, Resnick & Dym, Ltd. and James A. McKenna of Jackson Lewis LLP) at their respective addresses set forth below (or to such other address as any such party or counsel may designate in a notice).

C.  **Failure to Insist on Strict Compliance.**  The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof will not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

D.  **No Drafting Presumption.**  All parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement  will not be construed more strictly against one party than another.

E.  **Interpretation of Terms**.  Whenever possible, each provision and term of this Settlement Agreement  will be interpreted in such a manner as to be valid and enforceable.

F.  **Counterparts.**  This Settlement Agreement may be executed in counterparts. Each signed counterpart together with the others  will constitute the

full Settlement Agreement.

G. **<u>Prior Confidentiality Orders</u>**.  All agreements made and orders entered during the course of the First Transit Action and First Student Action relating to the confidentiality of information shall survive this Settlement Agreement.

H. **<u>Agreement Binding</u>**.  As of the date on which counsel for the parties execute this Settlement Agreement, this Settlement Agreement will be binding in all respects, unless the Court fails to approve this Settlement Agreement and the Settlement Agreement is thus vacated.

I. **<u>No Prior Assignments</u>**.  The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

DATED:  March 3, 2011


By: _____

Matthew J. Piers
Kalman D. Resnick
Joshua Karsh
Christopher J. Wilmes
Hughes, Socol, Piers, Resnick & Dym Ltd.
70 West Madison Street
Suite 4000
Chicago, IL 60602
Telephone:  312.580.0100
Facsimile:  312.580.1994
Email:  mpiers@hsplegal.com

***Attorneys for Plaintiffs and the Plaintiff Class***


DATED:  March 3, 2011


By: _____
James A. McKenna
Peter R. Bulmer
Jason A. Selvey
Jackson Lewis LLP
150 N. Michigan Ave.
Suite 2500
Chicago, Illinois 60601
Telephone:  312.787.4949
Facsimile:  312.787.4995
Email:  mckennaj@jacksonlewis.com


***Attorneys for Defendants First Transit, Inc. and First Student, Inc.***

# EXHIBIT

# A

*Para informacion en espanol, visite <u>www.ftc.gov/credit</u> o escribe a la FTC Consumer Response Center, Room 130-A 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.*

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to <u>www.ftc.gov/credit</u> or write to: Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
    - a person has taken adverse action against you because of information in your credit report;
    - you are the victim of identify theft and place a fraud alert in your file;
    - your file contains inaccurate information as a result of fraud;
    - you are on public assistance;
    - you are unemployed but expect to apply for employment within 60 days.
  In addition, by September 2005 all consumers will be entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See <u>www.ftc.gov/credit</u> for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See <u>www.ftc.gov/credit</u> for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.



EXHIBIT

A

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.ftc.gov/credit.

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.ftc.gov/credit.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. Federal enforcers are:**

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| Consumer reporting agencies, creditors and others not listed below | Federal Trade Commission: Consumer Response Center - FCRA<br>Washington, DC 20580          1-877-382-4357 |
| National banks, federal branches/agencies of foreign banks (word "National" or initials "N.A." appear in or after bank's name) | Office of the Comptroller of the Currency<br>Compliance Management, Mail Stop 6-6<br>Washington, DC 20219          800-613-6743 |
| Federal Reserve System member banks (except national banks, and federal branches/agencies of foreign banks) | Federal Reserve Consumer Help (FRCH)<br>P O Box 1200<br>Minneapolis, MN 55480<br>Telephone: 888-851-1920<br>Website Address: www.federalreserveconsumerhelp.gov<br>Email Address: ConsumerHelp@FederalReserve.gov |
| Savings associations and federally chartered savings banks (word "Federal" or initials "F.S.B." appear in federal institution's name) | Office of Thrift Supervision<br>Consumer Complaints<br>Washington, DC 20552          800-842-6929 |
| Federal credit unions (words "Federal Credit Union" appear in institution's name) | National Credit Union Administration<br>1775 Duke Street<br>Alexandria, VA 22314          703-519-4600 |
| State-chartered banks that are not members of the Federal Reserve System | Federal Deposit Insurance Corporation<br>Consumer Response Center, 2345 Grand Avenue, Suite 100<br>Kansas City, Missouri 64108-2638          1-877-275-3342 |
| Air, surface, or rail common carriers regulated by former Civil Aeronautics Board or Interstate Commerce Commission | Department of Transportation , Office of Financial Management<br>Washington, DC 20590          202-366-1306 |
| Activities subject to the Packers and Stockyards Act, 1921 | Department of Agriculture |